

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| (1) ADRIANA GARZA,<br>Individually and on Behalf of<br>All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>(2) TICKETMASTER L.L.C.,<br>(3) TICKETMASTER GROUP, INC., and<br>(4) TICKETMASTER ONLINE -<br>CITY SEARCH, INC.,<br><br>Defendants. | § § § § § § § § § § § § § § § | CIVIL ACTION NO.<br>___501CV030___ |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Plaintiff, ADRIANA GARZA, individually and on behalf of all others similarly situated, and files this Original Class Action Complaint against TICKETMASTER L.L.C., TICKETMASTER GROUP, INC., and TICKETMASTER ONLINE - CITY SEARCH, INC., (sometimes hereinafter collectively referred to as "Defendants" or "Ticketmaster"), and for cause of action would show the Court as follows:

### A. PARTIES

1. Plaintiff, ADRIANA GARZA, is a resident of Hidalgo County, Texas.

2. Defendant, TICKETMASTER L.L.C., is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business in California.

TICKETMASTER L.L.C. has agreed to accept service through William Hankinson, Akin, Gump, Strauss, Hauer & Feld, 1700 Pacific Avenue, Suite 4100, Dallas, Texas 75201.

3. Defendant, TICKETMASTER GROUP, INC., is a corporation organized and existing under the laws of the State of Illinois and having its principal place of business in California. TICKETMASTER GROUP, INC. has agreed to accept service through William Hankinson, Akin, Gump, Strauss, Hauer & Feld, 1700 Pacific Avenue, Suite 4100, Dallas, Texas 75201.

4. Defendant, TICKETMASTER ONLINE - CITY SEARCH, INC., is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business in California. TICKETMASTER ONLINE-CITY SEARCH, INC. has agreed to accept service through William Hankinson, Akin, Gump, Strauss, Hauer & Feld, 1700 Pacific Avenue, Suite 4100, Dallas, Texas 75201.

**B.  JURISDICTION**

5. The Court has diversity jurisdiction over this cause pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,0 00, exclusive of interest and costs, and the suit is between citizens of different states. In addition, the claims stated in this Complaint arise under the federal Truth-in-Lending Act, 15 U.S.C. § 1602, et seq. ("TILA"), and therefore, this Court also has jurisdiction pursuant to 28 U.S.C. § 1331.

**C.  VENUE**

6. Venue is proper in the Texarkana Division of the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b), as Ticketmaster is subject to personal jurisdiction in this district within the meaning of 28 U.S.C. § 1391(c).

D. **STATEMENT OF FACTS**

7. Defendants are in the business of selling tickets to concerts, plays, shows, and similar events.

8. They make such sales via the telephone, the Internet and at "remote sales outlets" located at various retail establishments, such as department stores like those owned by The May Department Stores Company (hereinafter "Foley's"), where Plaintiff purchased her tickets from Ticketmaster.

9. All of the Ticketmaster Defendants have common ownership and management.

10. In Texas, prior to January 1, 2000, the Ticketmaster Defendant selling tickets through retail outlets was Southwest Ticketing, Inc., individually and d/b/a Ticketron, Ticketmaster and Rainbow Ticketmaster (hereinafter "Southwest Ticketing").

11. Effective January 1, 2000, Southwest Ticketing was merged into Ticketmaster L.L.C., and ceased to exist as a separate legal entity.

12. Accordingly, since January 1, 2000, tickets sold in Texas have been sold by Defendant Ticketmaster L.L.C.

13. For the entire relevant time period, the Ticketmaster and the retailers who jointly operate the remote sales outlets, have sold tickets to the public at prices that have two primary components: (a) the ticket price set by the owner or promoter of the concert or show; and (b) a "Customer Convenience Charge" set by Ticketmaster.

14. Ticketmaster sets the "Customer Convenience Charge" and derives revenue solely from the Customer Convenience Charges, which revenue Ticketmaster shares with the retailers or other businesses hosting remote sales outlets, for those tickets sold through remote sales outlets.

15. During the entire relevant period, Ticketmaster mandated that (or allowed) the Customer Convenience Charge assessed on tickets sold via credit card (whether by telephone, Internet, or at a remote sales outlet) would include an additional amount to offset the fees charged by credit card issuers over and above the Customer Convenience Charge assessed on tickets purchased with cash.

16. Accordingly, during the entire relevant time period, Defendants have charged more for some or all of the tickets sold with credit cards than they charged for equivalent tickets sold for cash.

17. The difference in price did not constitute a discount on the price of tickets purchased with cash, because the ticket prices did not vary based upon the method of payment; rather, the Customer Convenience Charge increased on credit card sales. Further, the lower price did not constitute a legal cash discount because Defendants failed to offer conspicuous notice of the availability of the lower cash price.

18. On November 23, 1999, Plaintiff purchased four (4) tickets to an ice skating show from a "Ticketmaster" outlet located in a Foley's department store in McAllen, Texas.

19. All four tickets were for the same performance of the same show, and all four were located on the same row, and all four bore the same face price.

20. Plaintiff paid for two of the tickets using her VISA credit card. Ticketmaster charged her $38.32 for the two tickets purchased using her VISA card.

21. Plaintiff paid for the other two (2) tickets, in the same row and with the same face prices, using cash.

22. She was charged $37.46 for the two tickets purchased with cash.

23.    Ticketmaster, through its retail sales agent, charged Plaintiff more for the two (2) tickets paid for with her VISA credit card than for the two (2) tickets she paid for with cash (despite them having the same face price) pursuant to Defendants' policy and practice of including in the "Customer Convenience Charge" an additional charge over and above the "Customer Convenience Charge" charged on tickets purchased with cash (i.e., a surcharge) to offset the fees to be charged by credit card companies. Plaintiff was not advised, and did not know, that she was being charged more for the tickets bought with her VISA card than for the tickets she purchased with cash.

24.    Plaintiff did not receive a discount off the "regular prices" of the ice skating tickets on the two tickets she purchased with cash.

25.    On May 4, 2000, Plaintiff purchased four tickets from Ticketmaster via the Internet using her Visa card. She was charged a total of $132.11. According to Ticketmaster, the charge per ticket was as follows: the face value of each ticket at $35.00, plus a Ticketmaster convenience charge of $7.40, plus tax of $.62, for a total of $43.02 per ticket.

26.    On May 6, 2000, Plaintiff purchased two tickets from Ticketmaster via the telephone using her Visa card. She was charged the face value of each ticket, $53.28, plus tax, plus an $8.29 convenience charge per ticket.

27.    If Plaintiff had bought the tickets she purchased using the Internet and the telephone at remote sales outlets using cash, she would have been charged lower convenience charges. Because the face prices of the tickets did not vary according to the method of purchase, Plaintiff did not receive a discount off the "regular prices" of the tickets.

28. Defendants entered into a contractual agreement, governed by New York law, with First Financial Bank and Chase Merchant Services, L.L.C., to process credit card charges on behalf of the Ticketmaster Defendants.

29. Ticketmaster contractually agreed that it would not impose any special condition or charge on consumers who use a credit card.

30. In breach of this Merchant Service Agreement, Ticketmaster and its affiliated entities imposed a special charge on consumers who paid for tickets over the internet, telephone and at Remote Ticket Outlets with credit cards.

31. All consumers are third-party beneficiaries to the Merchant Service Agreement, under the governing New York law.

32. As such, Ticketmaster has violated and breached its Merchant Service Agreement as to all persons to whom it imposed a special charge for using their credit cards.

### E. LEGAL BACKGROUND

33. The ten States discussed below prohibit sellers from imposing a surcharge on a buyer who pays using a credit card rather than cash in a sale of goods or services.

34. All of these States' statutes derive from TILA and use identical or virtually identical language:

For example, Texas law provides as follows:

*Imposition of Surcharge for Use of Credit Card.*

> *(a)    In a sale of good or services, a seller may not impose a surcharge on a buyer who uses a credit card for an extension of credit instead of cash, a check, or a similar means of payment.*

Tex. Fin. Code Ann. § 339.001(a) (Vernon Supp. 2000).

Oklahoma law provides as follows:

> *2-417. Surcharge for use of credit card.*
>
> *No seller in any sales transaction may impose a surcharge on a card holder who elects to use a credit card in lieu of payment by cash, check or similar means.*
>
> *2-211. Discounts inducing payment by cash, check or similar means.*
>
> *With respect to all sales transactions, a discount which a seller offers, allows or otherwise makes available for the purpose of inducing payment by cash, check or similar means rather than by use of an open-end credit card account shall not constitute a credit service charge as determined under Section 2-109 of Title 14A of the Oklahoma Statutes if the discount is offered to all prospective buyers clearly and conspicuously in accordance with regulations of the Administrator. No seller in any sales transactions may impose a surcharge on a cardholder who elects an open-end credit card account instead of paying by cash, check or similar means....*

14A Okl. St. Ann. §§ 2-211 and 2-417.

Kansas law provides as follows:

*Prohibiting surcharge on credit cards.*

> *No seller or lessor in any sales or lease transaction or any company issuing credit cards may impose a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check or similar means. A surcharge is any additional amount imposed at the time of the sale or lease transaction by the merchant, seller or lessor that increases the charge to the buyer or lessee for the privilege of using a credit card.*

K.S.A. § 16a-2-403.

New York law provides as follows:

*Credit card surcharge prohibited.*

> *No seller in any sales transaction may impose a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check or similar means.*

McKinneys General Business Law § 518.

Florida law provides as follows:

*Credit cards; transactions in which seller or lessor prohibited from imposing surcharge; penalty.*

> *(1)   A seller or lessor in a sales or lease transaction may not impose a surcharge on the buyer or lessee for electing to use a credit card in lieu of payment by cash, check, or similar means, if the seller or lessor accepts payment by credit card. A surcharge is any additional amount imposed at the time of sale or lease transaction by the seller or lessor that increases the charge to the buyer or lessee for the privilege of using a credit card to make payments....This section does not apply to an offering of a discount for the purpose of inducing payment by cash, check or other means not involving the use of a credit card, if the discount is offered to all prospective customers.*

F.S.A. § 501.0117.

Connecticut law provides as follows:

*Surcharge based on payment method prohibited. Acceptance of bank credit card bearing a trade name. Discount not prohibited. Minimum purchase policy.*

> *(a)   No seller may impose a surcharge on a buyer who elects to use any method of payment, including, but not limited to, cash, check, credit card or electronic means, in any sales transaction....*

> *(c)   Nothing in this section shall prohibit any seller from offering a discount to a buyer to induce such buyer to pay by cash, check or similar means rather than by credit card.*

Conn. Gen. Stat. Ann. § 42-133ff.

Maine law provides as follows:

*Credit card restrictions.*

> *2.   No seller in any sales transaction may impose a surcharge on a cardholder who elects to use a credit card in lieu of payment by cash, check or similar means.*

> *3.   With respect to any sales transaction, any discount offered by the seller for the purpose of inducing payment by cash, check or other means not involving the use of a credit card does not constitute a finance charge as determined under Section 8-105, if that discount is offered to all prospective buyers and its availability is disclosed to all prospective buyers clearly and conspicuously....*

9-A M.R.S.A. § 8-303.

Massachusetts law provides as follows:

*Cardholder discounts; surcharges; finance charge.*

*(a)(1)...*

> *(2) No seller in any sales transaction may impose a surcharge on a cardholder who elects to use a credit card in lieu of payment by cash, check or similar means.*
>
> *(b) With respect to any sales transaction, any discount from the regular price offered by the seller for the purpose of inducing payment by cash, check or other means not involving the use of an open-end-credit plan or a credit card shall not constitute a finance charge under section 4 if such a discount is offered to all prospective buyers and its availability is disclosed clearly and conspicuously.*

M.G.L.A. 140D § 28A.

California law provides as follows:

§ 1748.1. *Surcharges; violations*

*No retailer in any sales, service, or lease transaction with a consumer may impose a surcharge on a cardholder who elects to use a credit card in lieu of payment by cash, check, or similar means. A retailer may, however, offer discounts for the purpose of inducing payment by cash, check, or other means not involving the use of a credit card, provided that the discount is offered to all prospective buyers.*

Finally, Colorado law provides as follows:

*Surcharges on credit transactions--prohibition.*

> *Except as otherwise provided in sections 24-19.5-103(2) and 29-11.5 -103(1)(b), C.R.S., no seller or lessor in any sales or lease transaction or any company issuing credit or charge cards may impose a surcharge on a holder who elects to use a credit or charge card in lieu of payment by cash, check, or similar means. A surcharge is any additional amount imposed at the time of the sales or lease transaction by the merchant, seller, or lessor that increases the charge to the buyer or lessee for the privilege of using a credit or charge card. For purposes of this section, charge card includes those cards pursuant to which unpaid balances are payable on demand.*

C.R.S.A. § 5-3-110.

## F.     CLASS ACTION ALLEGATIONS

35.     Plaintiff brings the claims alleged herein as a class representative pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and all others similarly-situated.

36.     The Class will consist of all persons who purchased a ticket from Ticketmaster, either at its Remote Ticket Outlets, over the Internet or via telephone, using a credit card as the method of payment, during the following periods of time:

   a.   As to those who purchased a Ticket(s) at a Point of Sale within the States of Texas, California and Florida-12/14/95 through 12/30/00.

   b.   As to those who purchased a Ticket(s) at a Point of Sale within the State of Oklahoma-12/14/94 through 12/30/00.

   c.   As to those who purchased a Ticket(s) at a Point of Sale within the States of Kansas and Colorado-12/14/96 through 12/30/00.

   d.   As to those who purchased a Ticket(s) at a Point of Sale within the States of New York, Connecticut, Maine and Massachusetts-12/14/93 through 12/30/00.

   e.   As to those who purchased a Ticket(s) at a Point of Sale in any of the other States within the United States of America-12/14/93 through 12/30/00.

37.     This suit meets the requirements of FRCP 23(a) for class certification because: (1) the Class is so numerous that joinder of all members is impracticable; (2) there is at least one question of law and/or fact common to the Class; (3) the claims of Plaintiff are typical of the claims of the Class; and (4) Plaintiff can and will fairly and adequately represent the interests of the Class. More specifically, as to numerosity, Plaintiff believes that the Class consists of tens of thousands of persons in the above-referenced States, and joinder of all those persons is certainly impracticable.

38. As to commonality, the following are some of the many questions of fact and/or law common to the Class:

   a. Whether Defendants' practices constitute assessment of "special charges" in breach of the Merchant Service Agreement as that phrase must be interpreted under TILA;

   b. Whether class members are third-party beneficiaries of the Merchant Service Agreement;

   c. Whether Defendants' practices constitute an unlawful "credit surcharge" in violation of the ten statutes set forth above; and as contemplated by TILA, and

   d. Whether Plaintiff and the members of the Class are entitled to recover reasonable attorneys' fees in connection with their declaratory judgment cause of action.

39. Plaintiff's claims are typical of the claims of the Class as a whole, because Plaintiff purchased tickets from a Ticketmaster Defendant using a credit card, just like all the other members of the Class.

40. In addition, she was charged a "special charge/surcharge" for doing so by Ticketmaster, just like all other Class members.

41. There are no material differences between Plaintiff's transaction with Defendants and those of the other members of the Class.

42. Plaintiff has no interest antagonistic to or in conflict with the interests of the remainder of the members of the Class.

43. Plaintiff can and will fairly and adequately protect the interests of the Class because she has retained experienced counsel to represent the Class, counsel have agreed to advance all costs, she has no conflict of interest with the Class, and she brings this lawsuit specifically for the protection of all persons similarly injured by Defendants.

44. It is appropriate to maintain this lawsuit as a class action pursuant to FRCP 23(b)(3) because questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual consumers, and because a class action is a superior method of bringing the claims of Plaintiff and the Class against Defendants.

45. Upon information and belief, the Class consists of tens of thousands of persons in nine different States. Joinder of all those persons is impossible.

46. Further, the damages suffered by Plaintiff and the members of the Class are small. For example, the amount of the unlawful credit surcharge assessed to Plaintiff was less than one dollar.

47. Plaintiff and the members of the Class could not economically maintain individual causes of action in order to recover such small sums.

48. Without a class action, therefore, no one in the Class will have a practical opportunity to recover the funds illegally collected from them by Defendants, making a class action the only and superior alternative.

### G.   ACTS OF AGENTS

49. Whenever in this Petition it is alleged that one or more of Defendants did any act, it is meant that: (a) one or more of Defendants performed or participated in the act; (b) the officers, agents or employees of one or more of Defendants performed or participated in the act on behalf of and under the authority, actual or apparent, of Defendants; or (c) the authorized agents of one or more of Defendants performed or participated in the act on behalf of or under the authority, actual or apparent, of one or more of Defendants.

**H. SUCCESSOR LIABILITY**

50. Defendant, Ticketmaster L.L.C., is responsible for all acts and/or omissions committed by Southwest Ticketing, Inc., individually and d/b/a Ticketron, Ticketmaster and Rainbow Ticketmaster ("Southwest Ticketing"), pursuant to the doctrines of successor and vicarious liability.

51. Defendant, Ticketmaster L.L.C., as Southwest Ticketing's successor in law, is jointly and severally liable for all acts and/or omissions of Southwest Ticketing.

**I. CONDITIONS PRECEDENT**

52. All conditions precedent to Plaintiff's and the Class' cause of action herein have been substantially complied with or Defendants have waived their right to demand compliance with them or Defendants are estopped from asserting noncompliance with them.

**J. FIRST CAUSE OF ACTION--RESTITUTION/UNJUST ENRICHMENT/MONEY HAD AND RECEIVED**

53. The additional amounts charged to Ms. Garza and the Class for tickets purchased with credit cards, as compared to equivalent tickets purchased with cash, constitute surcharges for the use of credit cards which violate the ten above-referenced State statutes.

54. Those amounts constitute money which, in equity and good conscience, should be returned by Defendants to Ms. Garza and the members of the Class pursuant to the equitable doctrine of restitution/unjust enrichment/money had and received, because such money was collected in violation of applicable law.

55. Defendants are additionally liable to Ms. Garza and the Texas members of the Class for reasonable and necessary attorneys' fees pursuant to Chapter 38 of the Texas Civil

Practices and Remedies Code in connection with Ms. Garza's and those Class members' successful prosecution of their cause of action for money had and received.

### K.  SECOND CAUSE OF ACTION--DECLARATORY JUDGMENT

56. Pursuant to the Declaratory Judgments Act, 28 U.S.C. §2201, Ms. Garza and the Class seek a declaration from this Court that the surcharges which Defendants charge to customers using credit cards rather than cash to pay for tickets are in breach of the Merchant Service Agreement and, additionally, illegal in the ten above-referenced States pursuant to the above-referenced State statutes.

57. Ms. Garza and the Class are entitled to recover such costs and reasonable and necessary attorneys' fees as are equitable and just in connection with their declaratory judgment cause of action. See 28 U.S.C. §2202.

### L.  THIRD CAUSE OF ACTION - BREACH OF CONTRACT

58. Defendants entered into a contractual agreement with First Financial Bank and Chase Merchant Services, L.L.C., to process credit card charges on behalf of the Ticketmaster Defendants.

59. Ticketmaster contractually agreed that it would not impose any special condition or charge on Class members who use a credit card.

60. In breach of this Merchant Service Agreement, Ticketmaster and its affiliated entities imposed a special charge on Class members who paid for tickets over the internet, telephone and at Remote Ticket Outlets with credit cards.

61. All Class members are third-party beneficiaries to the Merchant Service Agreement under the applicable New York law.

62. As such, Ticketmaster has violated and breached the Merchant Service Agreement as to all Class members, entitling them to recover all such special charges paid to Ticketmaster pursuant to New York law.

**M.** **REQUEST FOR RELIEF**

63. WHEREFORE, Plaintiff, Adriana Garza, individually and on behalf of all others similarly situated, respectfully requests the Court to grant them the following relief:

    a. Enter an Order certifying this case to proceed as a class action with Plaintiff, ADRIANA GARZA, as the Class Representative and Plaintiff's attorneys as Class Counsel;

    b. Enter a judgment requiring Defendants to pay general and specific damages in an amount sufficient to compensate Plaintiffs for Defendants' wrongful conduct, overcharging, unjust enrichment and any other theory of recovery;

    c. Enter a judgment awarding reasonable and necessary attorneys' fees and expenses incurred in obtaining declaratory judgment for Plaintiff and the Class;

    d. Punitive damages, in an amount sufficient to deter Defendants;

    e. Enter a judgment awarding Plaintiff and all of the Texas members of the Class their reasonable and necessary attorneys' fees in connection with their cause of action for money had and received pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code; and

    f. Enter a judgment awarding Plaintiff and the Class all other relief to which they may be justly entitled, including costs of court, and prejudgment and post-judgment interest at the highest rates allowed under Texas or other applicable law.

Respectfully submitted,

_____
JOEL M. FINEBERG
State Bar No. 07008520
MICHAEL W. SHORE
State Bar No. 18294915
SHORE ◆ FINEBERG, L.L.P.
2515 McKinney Avenue, Suite 1565
Dallas, Texas 75201
(214) 360-9622
(214) 739-3879 (fax)

**MARC R. STANLEY**
State Bar No. 19046500
**ROGER L. MANDEL**
State Bar No. 12891750
**STANLEY, MANDEL & IOLA, L.L.P.**
3100 Monticello Avenue, Suite 750
Dallas, Texas 75205
(214) 443-4300
(214) 443-0358 (fax)

- - and - -

**FRANCISCO J. ENRIQUEZ**
State Bar No. 06630500
**ENRIQUEZ & CANTU, L.L.P.**
4200-B North Bicentennial
McAllen, Texas 78504
(956) 686-5291
(956) 687-6125 (fax)

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon the following person(s) by Certified Mail, Return Receipt Requested, and/or by Telecopier and/or by Hand-Delivery, this __23__ day of January, 2001:

William Hankinson, Esq.
Akin, Gump, Strauss, Hauer & Feld
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201

_____
**JOEL M. FINEBERG**

P:\Clients\Ticketmaster\Pleadings\Texarkan Original Complaint1.wpd